# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| **ONEAL MILTON, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20-5077-SW-CV-WBG** |
| | ) | |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER AND OPINION AFFIRMING COMMISSIONER'S
## FINAL DECISION DENYING BENEFITS

Pending is Plaintiff Oneal Milton, Jr.'s appeal of Defendant Acting Commissioner of Social Security's final decision denying his application for supplemental security income. After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. For the following reasons, the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

Plaintiff was born in 1976, has a limited education,[2] and has no past relevant work. R. 21, 62-63, 133, 139, 141. In April 2019, he applied for supplemental security income, alleging a disability onset date of January 1, 2000. R. at 11, 133-36, 141-44. His disability onset date was later amended to April 10, 2019. R. at 11, 35-36. Plaintiff's application was denied, and he requested a hearing before an administrative law judge ("ALJ"). R. at 99-106.[3]

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, who was appointed as the Acting Commissioner of the Social Security Administration, is automatically substituted as Defendant in this suit.

[2] It is unclear if Defendant completed eleventh grade or graduated from high school. *See* R. at 21-22, 39-40, 63, 616.

[3] In April 2019, Plaintiff also applied for disability insurance benefits. R. at 139-40. But the ALJ's decision and this appeal pertain only to the denial of his application for supplemental security income. R. at 11, 35, 104-06.

On April 14, 2020, ALJ Jo Ann Draper conducted a hearing during which Plaintiff and a vocational expert ("VE") testified. R. at 29-79. On April 28, 2020, the ALJ issued her decision. R. at 11-23. The ALJ found Plaintiff's severe impairments are status post deep vein thrombosis; left compartment syndrome; a depressive disorder; and anxiety disorder with agoraphobia. R. at 13. She determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with the following additional limitations:

> [H]e can lift and carry 10 pounds occasionally and 5 pounds frequently; stand and/or walk 2 hours a day and sit 6 hours a day; he has the ability and concentration for routine, repetitive tasks involving simple, work-related decisions with little to no judgment and only occasional workplace changes; no dealing with the public; occasional contact with co-workers and supervisors; elevate his feet 24 inches off the ground for 10 to 15 minutes every 2 hours; and there can be no standing next to others and no performing tandem tasks with others.

R. at 17.

Based upon her review of the record, her RFC determination, and the hearing testimony, the ALJ determined Plaintiff is not disabled and can work as an addresser or document preparer. R. at 21-23, 66-67. Plaintiff unsuccessfully appealed the ALJ's decision to the Social Security Administration's Appeals Council. R. at 1-3, 130-32. He now appeals to this Court. Doc. 3.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin,* 750 F.3d 989, 992-93 (8th Cir. 2014). This Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin,* 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted). "As long as

substantial evidence in the record supports the Commissioner's decision, [a reviewing court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014).

## III.  DISCUSSION

Plaintiff's appeal focuses on the mental limitations in the ALJ's RFC. *See* Doc. 12.  One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).  The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 200).  Because the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted).  An ALJ may properly consider the opinion of an independent or non-examining physician in determining the RFC. *See*, *e.g.*, *Casey v. Astrue,* 503 F.3d 687, 697 (8th Cir. 2007).

Plaintiff argues this matter should be reversed and remanded because (A) the ALJ improperly weighed the medical opinions, and therefore, her RFC is not supported by sufficient evidence; and (B) the ALJ wrongly discounted Plaintiff's subjective complaints and failed to account for those complaints when formulating the RFC.

## A.  Medical Opinions

### (1)  Applicable Standard

Relevant to this matter, no single medical opinion or medical source is given any specific evidentiary weight, including controlling weight.  20 C.F.R. § 416.920c(a).[4]  The ALJ must

---

[4] Because Plaintiff filed his application after March 27, 2017 (R. at 11, 133-36, 141-44), 20 C.F.R. § 416.920c applies.

consider medical opinions in conjunction with the following factors: supportability, consistency, relationship with the claimant (including length of treatment relationship, frequency of examination, purpose of treatment relationship, and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion…." *Id.* §§ 416.920c(a), (c)(1)-(5). When an ALJ evaluates the persuasiveness of medical opinions, supportability and consistency are the "most important factors." *Id.* § 416.920c(a).

In her decision, the ALJ must "articulate…how persuasive [he/she] find[s] all of the medical opinions…." *Id.* § 416.920c(b). Three "articulation requirements" must be met. *Id.* § 416.920c(b)(1)-(3). First, "when a medical source provides multiple medical opinion(s), [the ALJ] will articulate how [he/she] considered the medical opinions…from that medical source together in a single analysis using the factors" identified above. *Id.* § 416.920c(b)(1). Second, the ALJ must "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* § 416.920c(b)(2). Third, when the ALJ finds "two or more medical opinions… about the same issue are both equally well supported…and consistent with the record…but are not exactly the same, [the ALJ] will articulate how [he/she] considered the other most persuasive factors" set forth above. *Id.* § 416.920c(b)(3).

### (2)    Medical Opinions Considered by the ALJ

#### (a)    *State Agency Consultant Linda Skolnick, Psy.D.*

In June 2019, Dr. Linda Skolnick, a state agency consultant, reviewed Plaintiff's medical records, and based on her review, determined Plaintiff can understand and remember simple instructions; concentrate and persist on simple tasks in a setting involving minimal social interaction; will perform best in a setting where he can work independently; can interact socially in a setting involving no public contact and only infrequent contact with co-workers and supervisors; and can adapt to changes in his environment that are introduced gradually. R. at 81-

4

95. The ALJ found Dr. Skolnick's opinion was persuasive because Dr. Skolnick is familiar with Social Security rules and regulations, and her findings were well supported by a detailed narrative analysis that included all evidence available at the time. R. at 20. The ALJ also found Dr. Skolnick's opinion was consistent with Plaintiff's "largely normal mental functioning, with only intermittent observed abnormalities." R. at 20.

In support of her finding, the ALJ cited several medical records. R. at 20. First, the ALJ relied on medical treatment records related to Plaintiff's physical ailments. R. at 20, 287, 291, 573, 578, 597, 603, 609, 629. Therein, medical providers observed, among other things, Plaintiff was "alert and cooperative"; had a "normal" or "appropriate" mood, affect and/or behavior; his memory was "normal"; his attention and concentration were "normal"; was fully oriented; and had "normal" insight and judgment. R. at 287, 291, 573-74, 578, 597, 603, 609, 629.

Second, the ALJ identified the June 2019 psychological evaluation conducted by Bryce T. Gray, Psy.D. R. at 20, 257-60. Consistent with Dr. Skolnick's opinion, Dr. Gray observed Plaintiff "was alert and oriented to person, place, and situation," his "thought process was linear," "judgment and insight appeared to be grossly intact," anxiety "is worsened in public," and it "is difficult for him to concentrate and be around others." R. at 259, 299.

Third, the ALJ referenced records from Plaintiff's one-night hospitalization in August 2019 for suicidal ideations. R. at 20, 315, 333, 339, 587.[5] Included is a psychiatrist's observations of Plaintiff before he was discharged. R. at 20, 334 587. The psychiatrist noted Plaintiff's behavior

---

[5] This is the only hospitalization related to Plaintiff's mental health in the record.

was "appropriate," his affect was "neutral," his thought process was "organized," he was "alert, fully oriented," and he denied suicidal ideations. R. at 334, 587.[6]

Finally, the ALJ cited a mental health record from 2017 and two mental health records from late 2019. R. at 20, 615, 622, 625. In 2017, a mental status examination at Burrell Behavioral Health revealed Plaintiff was alert with appropriate mood but his affect was constricted. R. at 615.[7] In November and December 2019, Plaintiff visited Dr. Shahid Kaous for psychiatric services. R. at 622, 625. During these two visits, Dr. Kaous observed Plaintiff's thought process was "linear" and "coherent and goal directed," he was alert and fully oriented, "normal" memory and concentration, and judgment and insight were "fair." R. at 622, 625. Specific to mood, Dr. Kaous noted Plaintiff's "mood and affect were moderately anxious, but not grossly dysphoric"[8] in November 2019, and his mood and affect were "euthymic"[9] in December 2019. R. at 622, 625.

Plaintiff argues the ALJ failed to consider his abnormal mental status examinations and selectively chose records with normal mental status examinations when she considered Dr. Skolnick's opinion. Doc. 12 at 8-11. Contrary to Plaintiff's argument, the records he identifies – i.e., R. at 259, 573, 616, and 622 (Doc. 12 at 9) – were considered by the ALJ as set forth above. R. at 20. He also contends treatment notes show he continued to suffer from anxiety, depression, and insomnia, and "[s]uch findings support significant limitations in his ability to function in the

---

[6] Plaintiff initially reported to hospital staff he lost his treating psychiatrist, Dr. Warren, six months prior to his admission and had been off his anxiety medications for the last month. R. at 314, 316. He requested assistance getting back on his medication. R. at 316. Soon after his admission, Plaintiff advised he was not suicidal and wanted to leave the hospital. R. at 322, 326. He made several requests for anxiety medication, including Xanax, during his hospital stay. R. at 322, 324-26, 495-96. He later admitted to the psychiatrist that the main reason he came to the hospital was his hope he would be switched to Xanax since his psychiatrists at Jordan Valley would not prescribe the drug to him. R. at 328-29, 582. The ALJ found Plaintiff's presentation at the hospital for suicidal ideation was later determined to be an attempt to obtain prescription narcotics. R. at 19.

[7] This mental health evaluation occurred nearly two years before Plaintiff's disability onset date.

[8] "Dysphoria" is "[a] mood of general dissatisfaction, restlessness, and anxiety." *Dysphoria*, Steadman's Medical Dictionary (28th ed. 2006).

[9] "Euthymia" is "[j]oyfulness; mental peace and tranquility" and "[m]oderation of mood, not manic or depressed." *Euthymia*, Steadman's Medical Dictionary (28th ed. 2006).

6

workplace." Doc. 12 at 9 (citing R. at 608, 612, 671, 674, 675). One treatment note he identifies is the 2017 mental status examination, which was considered by the ALJ even though it occurred before Plaintiff's disability onset date. R. at 20, 612-614. The remaining records identified by Plaintiff provide the following:

- In December 2019, Plaintiff complained of anxiety during a visit with Dr. Joe Himes. R. at 608. Yet, during the appointment, Dr. Himes observed Plaintiff was "[a]ble to carry on a calm and thoughtful conversation today," his mood and affect were appropriate, his insight and judgment were normal, and he was fully oriented to time, place, person and situation. R. at 609. Plaintiff reported he was "able to go to the grocery store most of the time," denied being fatigued, and denied having suicidal ideations. R. at 606, 608. Plaintiff's functional limitations are not discussed in the record. *See id.*

- On February 10, 2020, Plaintiff reported muscle spasms and insomnia to Dr. Gary Hamlin. R. at 675. Two weeks later, Plaintiff saw Dr. Hamlin for "anxiety management." R. at 674. Neither record provides much information, and neither refers to Plaintiff's functional limitations. *See* R. at 674-75. Further, Plaintiff saw Dr. Hamlin for anxiety management on March 9, 2020. R. at 673. The treatment notes indicate Plaintiff was "going to Georgia for [a] stock car event. *Id.* The notes also indicate Plaintiff must consult with "Resolutions" before the next medication prescription. *Id.*

- In March 2020, Kathy Martin with Resolutions KC-LLC, whose occupation is not further identified in the records, assessed Plaintiff for anxiety. R. at 671. Her assessment indicates it is based solely upon Plaintiff's self-report. *Id.* Plaintiff reported he did not have "excessive anxiety" in one-on-one situations but "going to the grocery store or being in groups greater than 4-6 people" causes him to "feel overwhelmed and uncomfortable." *Id.* Ms. Martin administered the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") to Plaintiff. She found the results were "indicative of someone with disabling anxiety, accompanied by some irregular thought processes and mild depression all consistent with Generalized Anxiety Disorder." *Id.* Ms. Martin recommended medication but noted, "Mr. O'Neal reports his current medication works well for him." *Id.* Other than Plaintiff's self-reported limitation related to interacting with others, no functional limitations are included in the record. *See id.*

Although these records were not available when Dr. Skolnick rendered her opinion in June 2019, they are not inconsistent with her opinion. Congruent with what Plaintiff told Ms. Martin, Dr. Skolnick found Plaintiff had a social interaction limitation, was "markedly limited" in his ability to interact appropriately with the public, was "moderately limited" in his ability to work in coordination with or in proximity to others without being distracted, and "would do best in a

7

setting…that involves no public contact and involves no more than infrequent contact with coworkers and supervisors." R. at 92-93.

In addition, these limitations were incorporated in the ALJ's RFC: "no dealing with the public; only occasional contact with co-workers and supervisors." R. at 17. The records identified by Plaintiff do not suggest – much less establish – his functional limitations are more severe than those set forth by Dr. Skolnick. Based on the foregoing, the Court finds the ALJ properly articulated why she determined Dr. Skolnick's opinion was persuasive and explained how she considered the supportability and consistency factors for Dr. Skolnick's opinion.

### (b)     Consultative Examiner Bryce Gray, Psy.D.

After examining Plaintiff in June 2019, consultative examiner Dr. Bryce Gray opined Plaintiff had "impaired social skills," he was not adaptable to changes, his ability to retain information and effectively carry out multi-step and complex instructions was moderately to markedly impaired, his ability to sustain concentration and his persistence in simple and repetitive tasks was mildly impaired, and his ability to reason and make work-related decisions was markedly impaired. R. at 257-60, 297-300. The ALJ noted Dr. Gray's opinion regarding Plaintiff's ability to understand, remember, and carry out instructions as well as his ability to sustain concentration, persistence, and pace was "supported by his own observations during the examination…." R. 20-21. But she found the remainder of Dr. Gray's opinion was less persuasive because it was "largely inconsistent with those same observations, as well as the observations of the claimant's treating providers, all of which generally show the claimant to demonstrate a normal mood and affect, good attention and concentration, and appropriate judgment and insight." R. at 21. Once again, the ALJ

cited the records referenced above in the Court's discussion of Dr. Skolnick's opinion to support her decision to give less weight to Dr. Gray's opinion. R. at 21.[10]

Plaintiff maintains the ALJ, when considering Dr. Gray's opinion, failed to consider "abnormal mental status examinations including anxious mood and affect, constricted affect, latency of speech, and tense behavior and motor activity." Doc. 12 at 9. He avers his treatment notes show he continued to suffer with anxiety, depression, and insomnia, and the records support greater functional limitations. *Id*. Yet, Plaintiff cites the same records discussed *supra*, section III(A)(2)(a). Doc. 12 at 9, 11. For the same reasons set forth above, the Court finds the ALJ properly articulated why she determined Dr. Bryce's opinion was persuasive in part and less persuasive in part.

### (c)    *Treating Providers Julie Warren, M.D. and Brandon Riesenmy, M.D.*

Dr. Julie Warren provided a Medical Source Statement – Mental ("MSSM") in April 2019 and another MSSM in December 2019. R. at 233-34, 275-76. Dr. Brandon Riesenmy supplied an MSSM in August 2019. R. at 272-73. Therein, Dr. Warren and Dr. Riesenmy opined on Plaintiff's functional limitations related to his mental health symptoms. R. at 233-34, 272-73, 275-76. Both medical providers opined Plaintiff was "markedly limited"[11] or "extremely limited"[12] in all four functional areas: understanding and memory, sustain concentration and persistence, social interaction, and adaptability. R. at 233-34, 272-73, 275-76. Dr. Riesenmy also stated Plaintiff would "have to be admitted to an assisted living facility if he did not get help." R. at 273.

---

[10] Plaintiff admitted to Dr. Gray he had been off his medications for a few months prior to the consultative examination. R. at 258. There is no indication by Dr. Gray whether his findings and assessment of capabilities would have been different had Plaintiff been on his full medication regimen at the time of the evaluation. *But see* R. at 87 (Dr. Skolnick observed claimant was previously treated effectively with anxiety medication, he had been off his medications for a few months, and it would be "reasonable to expect that he would improve again with treatment.").

[11] "Markedly limited" refers to a limitation that "seriously interferes with the ability to function independently." R. at 233, 272, 275.

[12] "Extremely limited" means an "[i]mpairment level preclude[s] useful functioning in this category." R. at 233, 272, 275.

The ALJ found Dr. Warren's and Dr. Riesenmy's opinions were "widely inconsistent with the observations of the claimant's other treating providers, all of which show the claimant to exhibit intact memory and concentration, a normal mood and affect, good attention and concentration, and appropriate judgment and insight." R. at 21. She also concluded their opinions were unsupported by their treatment notes. R. at 21. Consequently, the ALJ found their opinions were "wholly unpersuasive." R. at 21. She again referred to the same medical records cited in her discussion of Dr. Skolnick's opinion and included a reference to Dr. Gray's opinion. R. at 21.

Plaintiff argues the ALJ's reasons for discounting Dr. Warren's and Dr. Riesenmy's opinions were inadequate and unsupported by substantial evidence. Doc. 12 at 8-9. The Court disagrees. Although Dr. Warren and Dr. Riesenmy were Plaintiff's treating providers in the past, neither provider was treating Plaintiff when they provided their MSSMs. In fact, according to Plaintiff, Dr. Riesenmy treated him from 2006 to 2015, and Dr. Warren treated him from 2014 to 2017. Tr. at 41, 169. These providers' treatment notes are not contained in the record, likely because they had not treated Plaintiff since his disability onset date of April 10, 2019.

It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes. *Davidson v. Astrue,* 578 F.3d 838, 843 (8th Cir. 2009). Further, an ALJ may give less weight to medical opinions that are vague or conclusory and unsupported by medically accepted data. *Stormo v. Barnhart,* 377 F.3d 801, 805-06 (8th Cir. 2004). Here, neither opinion is supported by any clinical treatment notes from either opining medical provider. The MSSMs thus "stand alone" with no supporting records or objective medical data. *See Strongson v. Barnhart,* 361 F.3d 1066, 1071 (8th Cir. 2004) (affirming the ALJ's decision to give little weight to a medical source statement where the physician's opinion was "without explanation or support."); *Hogan v. Apfel,* 239 F.3d 958, 961 (8th Cir. 2001) (upholding an ALJ's decision to discount a medical source statement where the limitations "stand alone" and

were "never mentioned in [the physician's] numerous records or treatment" nor supported by any "objective testing or reasoning."). Because neither medical provider's opinion is supported by treatment notes or medical records, the Court finds the ALJ properly discounted their opinions.

## B.    Subjective Complaints

Plaintiff also argues this matter should be remanded because the ALJ did not properly consider his subjective complaints. When evaluating a claimant's subjective complaints, the ALJ "must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and 20 C.F.R. § 404.1529(c)). The ALJ is not required to discuss each of these factors. *Id*. (citation omitted). Further, the "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted).

On appeal, this Court does not reweigh the evidence before the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citation omitted). Additionally, the Court must "defer to the ALJ's determinations regarding" a claimant's subjective complaints, "so long as they are supported by good reasons and substantial evidence." *Id*. (citation omitted). This is because determinations about a claimant's subjective complaints "are in the province of the ALJ," and this Court "will not substitute its opinion for the ALJ's, who is in a better position to gauge [subjective complaints] and resolve conflicts in evidence." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citations omitted).

The ALJ noted Plaintiff reported "difficulty maintaining concentration for more than 20 minutes at a time; difficulty being around crowds of people; crying spells; difficulty handling criticism; panic attacks 3 to 4 times per week; an inability to live by himself; and difficulty kneeling, talking, hearing, understanding, following instructions, and completing tasks. R. at 18. While she found Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms, the ALJ concluded his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. at 18.

The ALJ observed Plaintiff did not require "aggressive mental health treatment or psychiatric hospitalization," and his symptoms were managed by medication, albeit with sporadic compliance. R. at 19.[13] Also, Plaintiff presented to medical providers with "intact memory and cognitive function, normal mood and affect, good attention and concentration, and appropriate judgment and insight during examinations." R. at 19. The "observed abnormalities" occurred when Plaintiff was evaluated in conjunction with his application for disability benefits. R. at 19. The ALJ also pointed out Plaintiff continued daily activities – "being a 'caretaker' for his mother, being a lodge member, driving, and shopping in stores – suggested his mental health symptoms "are far less limiting than alleged." R. at 19.

Plaintiff argues the ALJ's reasons for discounting his subjective complaints are not supported by substantial evidence. Doc. 12 at 14-17. First, he claims providers' treatment notes, which include abnormal findings, are inconsistent with the ALJ's analysis of his subjective complaints, and she should have not relied solely on normal mental health evaluations. *Id*. at 14-

---

[13] The ALJ noted Plaintiff's one brief hospitalization during the relevant time was purportedly due to suicidal ideations but "later determined to be an attempt to obtain prescription narcotics." R. at 19.

17. But, as discussed *supra*, section III(A)(2)(a), the ALJ considered both normal and abnormal mental health evaluations.

Second, Plaintiff contends the ALJ did not consider the quality of his daily activities. *Id*. at 15-16. He does not "go around large groups of crowds because of panic attacks," and he limited time spent with small groups of people to thirty minutes. *Id*. Plaintiff also points out he testified that is unable to live on his own, his mother reminded him to take his medication, and racing thoughts interfered with his ability to drive. *Id*. at 15. Plaintiff's alleged difficulties with social interaction, however, were fully accounted for in the ALJ's RFC and her determination that Plaintiff could perform sedentary work subject to limitations. R. at 17. Regarding his remaining examples of decreased quality of daily activities, the evidence as a whole is inconsistent with his testimony. Thus, the ALJ properly discredited his subjective complaints.

Third, Plaintiff maintains "this is not a case where the claimant's symptoms were controlled by medication," and thus, the ALJ's conclusion that Plaintiff's treatment did not support his subjective complaints fails. *Id*. at 16. Nevertheless, in a paragraph in his brief, Plaintiff states, "mental health professionals indicated that [Plaintiff] would benefit from medication management," and "treatment for medication management…is not evidence of mere cursory treatment." *Id*. Thus, it is unclear if Plaintiff believes his symptoms were controlled by medication. Regardless, the ALJ found Plaintiff's symptoms were managed with medication, although he sporadically complied. R. at 19. Further, Plaintiff does not identify anything in the record casting doubt on the ALJ's conclusion that he did not require aggressive treatment.

Based on the foregoing, the Court finds the ALJ's determinations as to Plaintiff's subjective complaints are supported by good reasons and substantial evidence.

## IV.    CONCLUSION

For all the foregoing reasons, the Court finds the Acting Commissioner's decision is supported by substantial evidence on the record as a whole.    Accordingly, the Acting Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE: December 30, 2021                                   _____/s/ W. Brian Gaddy_____
                                                         W. BRIAN GADDY
                                                         UNITED STATES MAGISTRATE JUDGE